1
2
3
4
5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7
8   REENA CHOPRA,                          )   No. C 09-0841 JSW (PR)
                                           )
9                Petitioner,               )   **ORDER DENYING PETITION FOR**
                                           )   **WRIT OF HABEAS CORPUS AND**
10      vs.                                )   **CERTIFICATE OF APPEALABILITY**
                                           )
11   ATTORNEY GENERAL OF                   )
     CALIFORNIA,                           )
12                                         )
                 Respondent.               )
13                                         )
14   _____

15                            **INTRODUCTION**

16          Petitioner has filed a habeas corpus petition pursuant to 28 U.S.C. § 2254.

17   Respondent was ordered to show cause why the writ should not be granted based upon

18   the nine claims set forth in the amended petition.[1]  Respondent filed an answer and

19   supplemental answer to the petition, and petitioner filed a traverse and a supplemental

20   traverse.  For the reasons discussed below, the writ is DENIED.

21                            **BACKGROUND**

22   I.    **Procedural Background**

23          On August 31, 2006, a jury in Alameda County Superior Court found Petitioner

24   guilty of practicing medicine without a license under California Business and Professions

25   Code § 2502.  On September 29, 2006, the trial court sentenced her to a term of two

26
27
28          [1]Claims seven, eight and nine were initially dismissed and subsequently reinstated
     (docket number 26).

years in state prison.  The California Court of Appeal affirmed the judgment, and the California Supreme Court denied review.  The United States Supreme Court denied Petitioner's petition for a writ of certiorari.  Petitioner subsequently filed unsuccessful habeas petitions in the California Court of Appeal and the California Supreme Court. Thereafter she filed the instant federal petition.

## II.   Factual Background

The California Court of Appeal summarized the facts and procedural background of the case as follows:

### The Conviction for Practicing Medicine Without a License (Count 1)

In June of 2003, Heena Balakrishnan lived in San Jose, and attended a Hindu Temple in Fremont. Defendant attended the same temple, and offered a "free medical consultation" there. Balakrishnan took her ailing mother, Sitaben Patel, to defendant for an examination. Balakrishnan asked defendant to examine her mother "to see if she can be exempt from the citizen test." She advised defendant of Patel's health problems: memory loss, depression, and "sensitive skin that is burning." Defendant represented to Balakrishnan that "she's a medical doctor with a Ph.D," and invited Balakrishnan to bring Patel to "her office in Fremont" the next day for an examination to "see if she qualifies to be exempt from the citizen test." Defendant also offered to sell Balakrishnan health insurance. Based on defendant's representations, Balakrishnan believed she was "a medical doctor with a Ph.D."

Balakrishnan took Patel to defendant's office in Fremont on June 23, 2003. Balakrishnan brought with her an "immigration form" (INS form) she obtained from the INS website to exempt Patel from the language proficiency citizenship test for health reasons. Before she arrived at defendant's office, Balakrishnan completed the "top part" of the INS form which provided personal information on Patel: her name, address, social security number, alien registration number, phone number, date of birth, and so forth.

Inside defendant's office Balakrishnan noticed a desk and a computer, along with a "name plate" that read "Dr. Reena Chopra." Balakrishnan gave defendant the INS form, and defendant proceeded with an examination of Patel, which consisted of a check of Patel's ears, eyes and blood pressure. Balakrishnan also gave defendant Patel's medical history and current "health issues." Defendant stated to Balakrishnan that no further examination of Patel was needed, as the INS would accept the form. Balakrishnan then gave defendant the INS form, which she agreed to complete by 9:00 that night. Before she left defendant's office, Patel also signed and dated the form to authorize "Dr. Reena Chopra" to conduct an examination. The remainder of the INS form, which asked for information

on Patel's health status in a series of boxes, was still blank. Balakrishnan wrote defendant a check for $70 for services which included completion of the INS form.

Balakrishnan returned to defendant's office about 9:00 p.m. to pick up the INS form. The office was closed, but the form was in defendant's mailbox. Balakrishnan examined the form. The boxes on the form had been checked and "filled out" with information on Patel's clinical diagnosis and physical limitations. Also included on the form was defendant's name, address, telephone number, the letters "C-a" for licensing state, and a reference to "family" and "general practice."[2]  The form was signed at the bottom of the page.

Balakrishnan noticed that much of defendant's handwriting was illegible. She called defendant with a request for her to type the information; defendant agreed. Balakrishnan returned to defendant's office the following day, where defendant typed a document on her computer to be attached to the INS form. The document recited Patel's medical impairments: reduced cognitive skills, memory deficit, confusion, dementia, and inability to learn or demonstrate knowledge. Defendant also placed a stamp on the document that read, "Life Improvement and Wellness Center." She did not sign the document, however, and still refused to do so when asked by Balakrishnan. When Balakrishnan continued to demand a signature, defendant finally signed and dated the document on top of the Life Improvement and Wellness Center stamp.

Balakrishnan realized that defendant's "medical license number" was still missing from the box at the bottom of page three of the form. Defendant became "angry" when Balakrishnan asked her "for her medical number," and refused to provide it. After a few telephone calls from Balakrishnan in which she demanded the medical license number, defendant finally provided one, "C12843." Balakrishnan wrote down the number given by defendant and transferred it in the appropriate box on the immigration form.

Defendant's behavior made Balakrishnan "suspicious," so she contacted an investigator with the "Medical Board" and discovered that defendant is "not a medical doctor." Balakrishnan demanded a return of her check from defendant. When defendant refused, Balakrishnan called her bank to "put a stop payment" on the check.

The medical license number given to Balakrishnan by defendant was actually issued to Dr. Hershell Copelan, now deceased, in June of 1950, and had expired on October 31, 2001. The licensing section manager of the California Medical Board testified that a search of the records of the licensing division revealed that no application for a medical license had ever been received from defendant, nor had any license been issued to her.

Expert testimony was adduced on the signature placed on the typed

---

[2]Balakrishnan subsequently added the date.

3

document defendant completed for attachment to the INS form. An inspector for the Alameda County District Attorney's Office obtained a series of handwriting exemplars from defendant. Defendant was asked to provide in "natural handwriting" her name, words, dates and numbers that appeared on the "INS form" and attached document she prepared for Balakrishnan. When defendant completed the exemplars she wrote very slowly, methodically and deliberately. On many different occasions, after completing the exemplar defendant "would go back" and add or alter letters or numbers.

An expert offered his opinion that defendant intentionally attempted to alter her normal "writing habits when providing the request[ed] exemplars." Still, the expert testified that defendant "wasn't able to alter everything," so he was able to get "a good idea of how she really writes." The expert examined the document attachment to the INS form which bore the stamp, "Life Improvement and Wellness Center," particularly the signature and date. He testified that the signature "began with a legible upper case R," but the remainder was a "series of illegible loops." According to the expert, the "R" was "very similar" to defendant's writing in the exemplars, and defendant "did write the date 6/23/03" on the document. The expert also offered his opinion that the signature of Patel on a document entitled "Life Improvement and Wellness Center Disclaimer" was a "tracing" from another "model signature ."

At trial, the prosecution also offered in evidence portions of defendant's testimony at the preliminary hearing. Defendant testified that she completed only that portion of the INS form in her handwriting, including her name, address and telephone number. She denied that she wrote a medical license number on the INS form or prepared the document attachment for the form. Defendant also testified that she observed Patel sign the Life Improvement and Wellness Center Disclaimer form, which included an admonition that defendant was not a medical doctor.

**The Charged Offenses for Practicing Medicine Without a License (Counts 2 and 3)[3]**

Rajinder and Gurpal Khangura noticed an advertisement in a local newspaper for health insurance coverage with the "Reena Chopra Medical Group."[4] The advertised cost of the medical insurance was "very cheap," $100 per year per person, so in December of 2002 they made arrangements with defendant to meet her in her office near Washington Hospital in Fremont. At the office, defendant was wearing a stethoscope and told them, "I'm the doctor." In response to Gurpal's questions, defendant said that the insurance covered treatment in hospitals. Gurpal testified that he

---

[3]As defendant was not convicted of these charges, we will recite the evidence pertinent to them concisely, as necessary to resolution of the issues raised on appeal.

[4]For the sake of clarity and convenience, we will refer to Rajinder and Gurpal Khangura, and their sons Sarwinder and Jatinder, by their first names.

"trusted" defendant, and gave her a check for $400 for medical insurance for himself, his wife, and their two sons.

Thereafter, the Khangura family received medical treatment from defendant. Sarwinder visited defendant's office in January of 2003, with a complaint of knee pain. Defendant took him to Washington Hospital for a "bone density test." Washington Hospital offers the general public free, unlimited access to a machine in the hospital community health resources library that tested bone density. While at the hospital defendant identified herself to the staff as a "doctor." After the test, defendant was given a "printout" with the results; Sarwinder did not get a copy of the document.[5] Back at the office, defendant told Sarwinder that he had "low bone density," and advised him to curtail physical activities such as weightlifting. She also gave him two forms of pill medication to strengthen his bones, one in a bottle and the other in a foil pack. After the visit to defendant's office, Sarwinder did not trust defendant and told his father, "I don't believe that she's a doctor ." He did not take the medication given to him by defendant.

The same day, Rajinder asked defendant to check her cholesterol level. Rajinder had a history of high cholesterol for which she took medication. Defendant asked Rajinder to provide a "urine sample" in the bathroom of the office. When Rajinder asked defendant why she was not giving a blood sample to check her cholesterol level as she had always done in the past, defendant replied that a urine sample "is an easy method and it is the best method."[6]

Defendant advised Rajinder that her cholesterol level was "very good." Rajinder subsequently visited defendant's office to get a "report" of the cholesterol test results, but defendant merely pointed at a note pad and repeated that the results were "fine." Rajinder also provided a second urine sample at defendant's office. Defendant gave Rajinder medication identified on the bottle as "Liv. 52" to treat her "cholesterol." Rajinder did not take the medication. Defendant charged a total of $100 for the examination and testing of Sarwinder's knee and the cholesterol check of Rajinder.

In late January or early February of 2003, Gurpal took his son Jatinder to defendant's office for treatment of stomach pain. Defendant asked Jatinder to provide a urine sample, and referred him to a chiropractor for X-rays. Defendant told the chiropractor that she was Jatinder's "primary care doctor," and asked for the X-rays to be sent to her for review. The chiropractor told Gurpal that the X-rays showed "nothing wrong" with Jatinder. Defendant then examined the X-rays at her office and proclaimed

---

[5]Expert testimony adduced by the prosecution established that a bone density test is done only to check for osteoporosis, not to assess a knee injury or knee pain.

[6]The prosecution presented evidence that a fasting blood test is the only reliable method of testing cholesterol.

that Jatinder's backbone was "not good." She gave them medication and stated that the stomach pain may have been caused by the backbone "problem," but "will go away." Gurpal paid defendant $70 for the office visit.

Gurpal discovered after a subsequent examination that the medicines given to him by defendant to treat Jatinder were labeled expired, not to be sold outside India, and not be taken by anyone "under 16 years old."[7] He then became dubious that defendant was "really a doctor." When Jatinder's stomach pain persisted, Gurpal took him to an internist, who diagnosed Jatinder with a urinary tract infection and successfully treated him with antibiotics.

Gurpal called defendant and asked her to "cancel" their insurance coverage and refund their money. Defendant became "upset," and told Gurpal not to call her. Rajinder attempted to obtain a refund by visiting defendant's office, but defendant began shouting and pounding on the table. She yelled at Rajinder that she was "not going to refund the money." Gurpal then contacted the Medical Board to report that defendant was "not a doctor."

The prosecution also presented evidence of defendant's preliminary hearing testimony that she was in New Orleans "on a holiday" around February 1, 2003, when she allegedly treated Jatinder for stomach pain. She produced a purported receipt from the LaSalle Hotel on Canal Street in New Orleans which indicated that she checked into the hotel on January 30th and left on February 7th. At trial, a former manager of the LaSalle Hotel examined the receipt offered by defendant and testified that it was not genuine.

**The Uncharged Misconduct Evidence**

Other evidence that defendant represented herself as a doctor was offered at trial. Meera Jani, a state licensed chiropractor with offices in Fremont and South San Francisco, testified that she met defendant in August of 2002 at an Indian cultural health fair. Defendant approached Jani's booth at the health fair and identified herself as "Dr. Reena Chopra" of "Chopra's Medical Group." Defendant also gave Jani a business card with the name Dr. Reena Chopra and her address on it. Thereafter, they had lunch together several times and discussed "networking together." Defendant represented that she was with "Chopra's Medical Group" and "was on staff at Washington Hospital." Jani believed that defendant was a medical doctor as she represented.

Defendant stated that she wanted to refer her patients who needed chiropractic care to Jani. She also asked Jani if she wanted to become part of Chopra's Medical Group. Defendant referred Jatinder to Jani for lower back X-rays in early February 2003. She represented that the patient did not have insurance, and asked Jani to "give some kind of cash discount."

---

[7]Jatinder was then 15 years old.

Jani agreed to charge Gurpal for just the cost of the X-rays.

Anand Goundar, a naturopath, testified that defendant "identified herself as a medical doctor and also identified herself as a homeopath" during a conversation at a "fund raising dinner" in August or September of 2002. Defendant added that she had an office in "Fremont," and was associated with a "large company by the name of Chopra's Medical Group." She gave Goundar a business card that identified her as "Dr. Chopra" and referred to "Chopra's Medical Group." Defendant also invited Goundar to her office, and expressed to him that "it would be safe" for him to work as a naturopath "under her license." Based on defendant's representations to him, Goundar "believed she was a medical doctor." While visiting defendant's office, Goundar was advised by her to complete a course in homeopathy using "her medical license." During a second visit to defendant's office, Goundar noticed that she did not display any diplomas, California medical license, charts, or reference books. He "asked her are you really a medical doctor." Defendant became angry, accused Goundar of "asking too many questions," and said, "I am a medical doctor, ... and if you want to find it, go find it from the Board." Goundar contacted the California Medical Board, then filed a complaint against defendant.

Defendant represented herself as a doctor to local business people. David Lowman, an insurance investment broker, testified that at a Fremont Chamber of Commerce "networking event" in March or April of 2003, defendant wore a badge that stated, "Dr. Reena Chopra" and "Chopra Medical Group." Defendant told Lowman that "she was an internal medicine doctor," and worked with a "group of five or six" other physicians. She also showed him a "flier" that displayed her e-mail address as "Dr. Chopra," and had references to lab tests, X-rays, prescriptions and health insurance coverage. At a subsequent meeting in defendant's office, she asserted that "she went to UCLA Medical School." Defendant further mentioned that she offered a health plan affiliated with Washington Hospital, where she did rounds.

At other Fremont Chamber of Commerce functions, Barbara Jenkins, a fashion consultant, met defendant, who wore a badge that "said Dr. Reena Chopra." Defendant gave Jenkins a business card with the title Chopra Medical Group. At a "Women in Business Connection Club" meeting which Jenkins attended, defendant introduced herself as "Dr. Reena Chopra," and described herself as a "practitioner of holistic medicine," specializing in "sexual problems." A flier distributed by defendant mentioned that her office was located in the Washington Medical Center across from the hospital, and she offered health insurance. Based on defendant's representations, Jenkins thought defendant was a "medical doctor" with her own office and medical group affiliated with Washington Hospital, an "acupuncturist," and a practitioner of "holistic medicine."

Testimony was given by Richard Oriakhi, an attorney who represented defendant in a personal injury case she filed. Oriakhi testified that on the form complaint he wrote "Medical doctor" on the line that requested "occupation." Defendant then reviewed and signed the form.

Karen Halverson, community health librarian at Washington
Hospital, testified that defendant regularly visited the hospital with people
she referred to as "her patients" to use the bone density test machine. She
identified herself as "Dr. Reena Chopra." Defendant was not listed on the
medical staff of Washington Hospital.

*People v. Lockhart*, No. A115508, 2007 WL 4426652, **1-6 (Cal. Ct. App. Dec.19,

2007) (footnotes in original).

**STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence

on the basis of a claim that was reviewed on the merits in state court unless the state

court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined

by the Supreme Court of the United States; or (2) resulted in a decision that was based on

an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law

and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09

(2000), while the second prong applies to decisions based on factual determinations,

*Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under

the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to

that reached by [the Supreme] Court on a question of law or if the state court decides a

case differently than [the Supreme] Court has on a set of materially indistinguishable

facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable

application of" Supreme Court authority, falling under the second clause of § 2254(d)(1),

if it correctly identifies the governing legal principle from the Supreme Court's decisions

but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

The federal court on habeas review may not issue the writ "simply because that court

concludes in its independent judgment that the relevant state-court decision applied

8

clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340.  When there is no reasoned opinion from the highest state court to consider the Petitioner's claims, the Court looks to the last reasoned opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991).

## ANALYSIS

The amended petition raises the following ground for relief: (1) Petitioner received ineffective assistance counsel at trial and on appeal; (2) her sentence violated her right to due process and to be free from cruel and unusual punishment; (3) the jury instruction on the presumption of innocence and reasonable doubt violated her right to due process; (4) Section 2502 of the California Business and Professions Code, the statute under which she was convicted, is unconstitutional; (5) the prosecutor committed misconduct; (6) judicial misconduct violated her right to due process; (7) evidence was admitted erroneously; (8) negative pretrial publicity prejudiced the jury; and (9) there was insufficient evidence to support the conviction.

1.    Ineffective Assistance of Counsel

Petitioner claims that she received ineffective assistance of counsel at trial and on appeal in violation of his constitutional rights.  Ineffective assistance of trial or appellate counsel violates a defendant's Sixth Amendment right to counsel and the Due Process Clause, respectively, if counsel's conduct was objectively unreasonable and prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984) (trial counsel); *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (appellate counsel).  Prejudice from trial counsel's ineffective assistance means that there is a reasonable probability that the counsel's conduct affected

the outcome of the trial.  *Strickland*, 466 U.S. at 687-94.  Prejudice from appellate counsel's ineffective assistance means a reasonable probability that but for appellate counsel's conduct, the petitioner would have prevailed in his appeal.  *Smith*, 528 U.S. at 285-86.

Petitioner's first claim is that trial counsel was ineffective because he called her to testify at the preliminary hearing, during which she admitted to filling out her name, address, telephone number and signature on Patel's INS form.  *People v. Chopra,* 2007 WL 4426652 at *6.  At trial, the prosecution argued that this testimony established that she had admitted to completing a portion of the INS form that was required to be filled out by a doctor.  *Id.*  The California Court of Appeal rejected this claim because counsel could have reasonably determined, as a tactical matter, that the benefits of allowing Petitioner to testify at the preliminary hearing outweighed the risk of harm.  *Id.* at ** 7-8.

Petitioner did not have any prior convictions that could have been used to impeach her or portray her in a negative light.  Testifying, moreover, gave Petitioner the opportunity to present her own story, including largely exculpatory testimony that she did not provide medical care for Patel and other and did not represent herself as a licensed medical doctor.  Counsel could have reasonably been trying to obtain reduced charges or a settlement prior to trial.  Indeed, it appears from the record that Petitioner herself wanted to testify.  Most tactical trial decisions carry some risk of harm to the defendant.  The harm to Petitioner in this case was minimal as her only admission was to writing basic and non-medical information on the form.  *Id.* at *6 n.8.  Under these circumstances, the state court could reasonably and without acting contrary to federal law within the meaning of 28 U.S.C. § 2254(d)(1) conclude that allowing Petitioner to present her testimony at the preliminary hearing was not objectively unreasonable.

Petitioner also claims that trial counsel failed to seek discovery.  The record

shows that counsel did file a motion for complete discovery from the prosecution, however, including witness statements and information, recording transcripts, identities of experts, police reports, and viewing of physical evidence.  Petitioner does not specify what additional discovery counsel could have requested that would have made a difference in the outcome of the case.

Petitioner claims that trial counsel failed to call witnesses or present exculpatory evidence.  She does not, however, describe the testimony that the missing witnesses would have given, let alone show that such testimony would have overcome the prosecution evidence to make a difference in the outcome of the trial.  The missing evidence she describes consists of ads in which she represented herself as a homeopath, Balakrishnan's complaints to the Better Business Bureau and the Fremont Chamber of Commerce describing Petitioner as a holistic practitioner, an outdated address on one of those complaints, Petitioner's accusing Patel of committing "fraud," her Fremont business license, her diplomas, and her membership in "pre-paid" plans.  None of this evidence precludes her having misrepresented herself as a medical doctor to Balakrishnan and Patel or her having provided treatment to Patel without a license, nor does it call into question the reliability of Balakrishnan's testimony.  Petitioner also cites a letter she wrote to the INS accusing Patel of fraud, but this does not establish a motive for Balakrishnan to lie because there is no evidence that Balakrishnan knew about the letter when she reported Petitioner.  As the evidence that Petitioner cites would not have helped Petitioner avoid conviction, counsel's failure to present such evidence was neither unreasonable nor prejudicial.

Petitioner claims that counsel failed to object to the prosecution's handwriting expert or to call an expert of his own.  Counsel conducted an extensive cross-examination of the expert, however, and Petitioner does not identify any different findings or testimony that another expert would have given.  Petitioner complains that

11

the expert relied on photocopies of signatures, but there is no evidence that adequate handwriting analysis cannot be performed from such copies.  Petitioner also argues that defense counsel should have moved to suppress her preliminary hearing testimony, but such a motion would have failed as preliminary hearing testimony is plainly admissible as a party admission.  Petitioner's additional complaint that counsel should not have focused his closing argument on the prosecution's failure of proof is similarly specious as counsel's decision was successful in gaining an acquittal on two out of three counts, and Petitioner has not shown that an alternative defense argument would have fared better.

Petitioner also makes a number of conclusory complaints about counsel's performance at trial: that counsel stipulated to certain facts, created a "leading" jury instruction, failed to keep her adequately informed about the case, failed to request a "mistake of law" instruction, gave "false" advice and assurances, did not "invoke procedural and substantive safeguards," did not take an interest in the case, and misadvised her that the prosecution would lose.  Petitioner does not set forth any specific facts in support of these complaints, nor does he explain how they were unreasonable or affected the outcome of the trial.  Such conclusory allegations, without more explanation, do not warrant federal habeas relief.

Petitioner complains that prior to sentencing, counsel refused to return her passport and jewelry, "threatened" that the trial judge would send her to prison if she asked for her things, "threatened" that if she requested substitution of counsel that she would be unrepresented and go to prison, and did not give her a copy of the probation report.  She failed to inform the trial court of these allegations when she filed her motion to substitute counsel, however, and then she withdrew the motion.  More importantly, Petitioner does not show how any of these allegations, if true, caused her to receive inadequate, let alone prejudicially inadequate representation by counsel.  *Cf. Schell v.*

1    *Witek*, 218 F.3d 1017, 1023 (9th Cir. 2000) (en banc) (in cases when a motion to

2    substitute counsel is denied, the ultimate inquiry in federal habeas proceeding is

3    whether petitioner's Sixth Amendment right to counsel was violated).  At sentencing,

4    defense counsel thoroughly cross-examined the probation officer about the probation

5    report and elicited inaccuracies therein, and he argued that Petitioner's offense was

6    merely misdemeanor for which she should not go to prison.  Under these circumstances,

7    Petitioner has not shown that she received ineffective assistance of counsel prior to or

8    during sentencing.

9          Finally, Petitioner argues that appellate counsel was ineffective because he did not

10    raise any meritorious issues on appeal.  Petitioner does not show that how any claims that

11    appellate counsel failed to raise would have succeeded on appeal.  As a result, Petitioner

12    is not entitled to relief on this claim.  *See Smith*, 528 U.S. at 285-86.

13    2.    Two-Year Sentence

14          Petitioner claims that the trial court violated her rights to due process and to be

15    free from cruel and unusual punishment by sentencing her to two years in state prison

16    rather than to probation.

17          State sentencing courts must be accorded wide latitude in their decisions as to

18    punishment.  *See Walker v. Endell*, 850 F.2d 470, 476 (9th Cir. 1987).  Generally,

19    therefore, a federal court may not review a state sentence that, like Petitioner's sentence

20    here, falls within statutory limits.  *Id.*  A federal court may vacate a state sentence

21    imposed in violation of due process if a state trial judge imposed a sentence in excess of

22    state law, *Walker*, 850 F.2d at 476, or enhanced a sentence based on materially false or

23    unreliable information or a conviction infected by constitutional error, *see United States*

24    *v. Hanna*, 49 F.3d 572, 577 (9th Cir. 1995).  Petitioner has made neither showing here.

25    The California Court of Appeal explained why the sentence comports with state law and

26    justified by the circumstances of the case:

27

28                                           13

1

2

3

4

5

6

7

8

9

10

          Defendant is cognizant of the stringent limits placed on our review.
"The grant or denial of probation is within the trial court's discretion and
the defendant bears a heavy burden when attempting to show an abuse of
that discretion." (*People v. Aubrey* (1998) 65 Cal.App.4th 279, 282.) " 'In
reviewing [a trial court's determination whether to grant or deny
probation,] it is not our function to substitute our judgment for that of the
trial court. Our function is to determine whether the trial court's order
granting [or denying] probation is arbitrary or capricious or exceeds the
bounds of reason considering all the facts and circumstances.' [Citation.]"
(*People v. Weaver* (2007) 149 Cal.App.4th 1301, 1311.) "We will not
interfere with the trial court's exercise of discretion 'when it has considered
all facts bearing on the offense and the defendant to be sentenced.'
[Citation.]" (*People v. Downey* (2000) 82 Cal.App.4th 899, 910 .) "The
burden is on the party attacking the sentence to clearly show that the
sentencing decision was irrational or arbitrary. [Citation.] In the absence of
such a showing, the trial court is presumed to have acted to achieve
legitimate sentencing objectives, and its discretionary determination to
impose a particular sentence will not be set aside on review." (*People v.
Superior Court* (Du) (1992) 5 Cal.App.4th 822, 831.)

11

12

13

14

15

16

17

18

19

20

21

          Here, the trial court properly considered and articulated the
numerous criteria that support the denial of probation (Cal. Rules of Court,
rule 4.414): the "particular sophistication" of the defendant; the victims
were "particularly vulnerable persons" from "the Indian immigrant
community" who were not familiar with American medical practices;
defendant took "advantage of the position of trust and confidence" she had
with the victims; the potentially "serious consequences" to the community
of posing as a doctor; defendant's "pattern of deceitful conduct" with
people; her failure to cooperate with probation; her perjury at the
preliminary hearing and deceit with the probation department; she has
"taken advantage of the legal system" and attained status as a vexatious
litigant; and her apparent inability to abide by the terms and conditions of
probation. The court also noted two mitigating circumstances that were not
specified in the probation report-no prior convictions, and the victims were
not physically injured-but found them outweighed by the aggravating
factors.  We do not find any indication in the record of bias on the part of
the trial court or improper consideration of information. (*People v. Tang*
(1997) 54 Cal.App.4th 669, 680.) The decision to deny probation and
impose the two-year middle term was not an abuse of discretion. (*People v.
Downey*, supra, 82 Cal.App.4th 899, 910; *People v. Superior Court*, supra,
5 Cal.App.4th 822, 831-832.)

22

23

24

25

26

27

28

*People v. Chopra*, 2007 WL 4426652 at **13-14.  This Court must defer to the Court of

Appeal's determination that the sentence comports with state law, *see Hicks v. Feiock*,

485 U.S. 624, 629 (1988), and Petitioner has not shown that the trial court did not have

sufficient reliable evidence to meet the state factors for imposing a two-year prison term

instead of probation.  Accordingly, there is no due process violation arising from her

sentence.

Petitioner's sentence also does not violate the Eighth Amendment. The Cruel and Unusual Punishments Clause "does not require strict proportionality between crime and sentence," but rather forbids only "extreme sentences that are grossly disproportionate to the crime." *Graham v. Florida*, 130 S. Ct. 2011, 2021 (2010). "[O]utside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare." *Solem v. Helm*, 463 U.S. 277, 289-90 (1983). A two-year prison term is far from "extreme" or "grossly disproportionate" to the acts of fraudulently misrepresenting herself to patients and putting their health at risk by medically evaluating them despite her lack of medical training, expertise or license. *See, e.g.*, *id.* (sentence of life imprisonment without possibility of parole for seventh nonviolent felony violates 8th Amendment); *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003) (upholding sentence of two consecutive terms of 25-years-to-life for recidivist convicted most recently of two counts of petty theft with a prior conviction).

3.   Jury Instruction

Petitioner claims that the trial court violated her right to due process by giving an erroneous instruction to the jury about the presumption of innocence and the prosecution's burden of proof beyond a reasonable doubt, pursuant to CALCRIM No. 220. She argues that the instruction improperly allowed the prosecution to meet its burden of prof simply by presenting stronger evidence than the defense, and this was especially harmful in her case because the defense did not present evidence.

The California Court of Appeal rejected the claim on the following grounds:

> We proceed to defendant's challenge to the CALCRIM No. 220 instruction on the presumption of innocence and proof beyond a reasonable doubt. She claims that the instruction "undermined the presumption of innocence and supplanted it with a far lesser standard of impartiality" by directing the jury to "compare and consider all the evidence" presented at

trial to determine guilt or innocence.[8] She specifically directs her objection to the "impartially compare" language of the instruction, which she claims improperly invites the jury to balance the competing "two sets of evidence" presented at trial. Defendant asserts that use of the "word 'compare,' " "imparted to the jury the incorrect idea" that the prosecution met its burden of proof merely if "its evidence obviously outweighed" that presented by the defense-particularly where, as here "no defense case is presented." Defendant argues that the defect in the " 'impartial comparison' language" of CALCRIM No. 220 instruction "was amplified" by the "abiding conviction" definition of reasonable doubt, which "conveyed" the concept of a "lasting" determination, but failed to impart to the jury "the gravity or weight" of the evidence which is essential to the standard of "proof beyond a reasonable doubt." The result, defendant concludes, was a "lessening of the meaning of 'beyond a reasonable doubt,' " in violation of his due process rights.

"The due process clause of the Fourteenth Amendment protects the accused against conviction except on proof beyond a reasonable doubt. [Citations.] The United States Constitution does not require jury instructions to contain any specific language, but they must convey both that the accused is presumed innocent until proved guilty and that the accused may be convicted only upon proof beyond a reasonable doubt." ( People v. Flores (2007) 153 Cal.App.4th 1088, 1092-1093.) In our review of the CALCRIM No. 220 instruction, the governing test "is' " 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution.' ' [Citations.]" ( People v.. Anderson (2007) 152 Cal.App.4th 919, 938.) We must determine whether its "meaning was objectionable as communicated to the jury." ( People v. Dieguez (2001) 89 Cal.App.4th 266, 276.) " 'Here the question is, how would a reasonable juror understand the instruction. [Citation.] In addressing this question, we consider the specific language under challenge and, if necessary, the charge in its entirety. [Citation.] Finally, we determine whether the instruction, so understood, states the applicable

---

[8]The CALCRIM No. 220 instruction given to the jury reads as follows: "The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true. You must not be biased against the defendant just because she has been arrested, charged with a crime, or brought to trial. [¶] A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove each element of a crime beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt.... [¶] Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt. [¶] In deciding whether the People have proved their case beyond a reasonable doubt, you must *impartially compare and consider* all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, she is entitled to an acquittal and you must find her not guilty." (Italics added.)

16

law correctly.' [Citation.]" ( *People v. Woodward* (2004) 116 Cal.App.4th 821, 834; see also People v. Jensen (2003) 114 Cal.App.4th 224, 239.) "The meaning of instructions is no longer determined under a strict test of whether a 'reasonable juror' could have understood the charge as the defendant asserts, but rather under the more tolerant test of whether there is a 'reasonable likelihood' that the jury misconstrued or misapplied the law in light of the instructions given, the entire record of trial, and the arguments of counsel." (*People v. Dieguez, supra,* at p. 276; *see also Estelle v. McGuire* (1991) 502 U.S. 62, 70-75; *People v. Young* (2005) 34 Cal.4th 1149, 1202; *People v. Clair* (1992) 2 Cal.4th 629, 663; *People v. Kelly* (1992) 1 Cal.4th 495, 525; *People v. Wade* (1995) 39 Cal.App.4th 1487, 1490-1491.)

Defendant's argument is in some aspects rather convoluted and sophistical. She has focused on the isolated phrase in CALCRIM No. 220 which advised the jury to "impartially compare and consider" the evidence, whereas the language of jury instructions must be considered and interpreted in totality. (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1248; *People v. Castillo* (1997) 16 Cal.4th 1009, 1016.) When read in its entirety, the CALCRIM No. 220 instruction neither compromised the presumption of innocence nor diminished the standard of reasonable doubt. ( *People v. Guerrero* (2007) 155 Cal.App.4th 1264, 1268.) The instruction clarified that defendant "is presumed to be innocent," and to overcome the presumption the People must "prove each element of a crime beyond a reasonable doubt." After advising the jury to "impartially compare and consider" all of the evidence presented at trial, the instruction reinforced for the jury that, "Unless the evidence proves the defendant guilty beyond a reasonable doubt, she is entitled to an acquittal and you must find her not guilty." The only reasonable understanding of this language is that reasonable doubt may arise solely from inadequate evidence offered by the prosecution, even without any relative lack of defense evidence. ( *People v. Flores*, supra, 153 Cal.App.4th 1088, 1093.) "Contrary to defendant's suggestion, CALCRIM No. 220 instructs the jury to acquit in the absence of evidence." (*People v. Guerrero*, supra, at p. 1268.)

Other instructions further prevented the jury from finding guilt based upon a mere comparison of the weight of the evidence presented by the parties. The jury was directed to "decide whether a fact in issue has been proved based on all the evidence," direct and circumstantial, none of which "is entitled to any greater weight than the other." (CALCRIM No. 223.) The instructions added: any inferences or conclusions drawn from circumstantial evidence must be established beyond a reasonable doubt; reasonable conclusions that point to innocence must be accepted over those that point to guilt; the jury is to consider the credibility of the witnesses without bias or prejudice based upon consideration of "anything that reasonably tends to prove or disprove the truth or accuracy of that testimony;" neither side is required to call witnesses who may have relevant information on the case; in the evaluation of evidence, do "not simply count the number of witnesses who agree or disagree on a point and accept the testimony of the greater number of witnesses;" the defendant "has an absolute constitutional right not to testify" and may "rely on the state of the evidence and argue that the People have failed to prove the

17

charges beyond a reasonable doubt " to obtain an acquittal. (CALCRIM Nos. 223, 224, 226, 300, 302, 355, italics added.) We must presume the jurors understood, correlated and followed the court's instructions. ( *People v. Sanchez* (2001) 26 Cal.4th 834, 852; *People v. Holmes* (2007) 153 Cal.App.4th 539, 546.)

Upon our consideration of the instruction as a whole-and particularly in light of the other instructions given-we are persuaded to follow existing authority that has uniformly found no violation of due process principles in CALCRIM No. 220. (*People v.. Guerrero*, supra, 155 Cal.App.4th 1264, 1268-1269; *People v. Flores*, supra, 153 Cal.App.4th 1088, 1093; *People v. Anderson*, supra, 152 Cal.App.4th 919, 943-944; *People v. Westbrooks* (2007) 151 Cal.App.4th 1500, 1509-1510; *People v. Hernández Ríos* (2007) 151 Cal.App.4th 1154, 1156-1157.

*People v. Chopra*, 2007 WL 4426652 at **11-13.

The California Court of Appeal's denial of this claim was not "contrary to" clearly established federal law within the meaning of 28 U.S.C. § 2254(d)(1)(a) because it applied the correct standard for analyzing whether a given instruction violates the federal constitutional right to due process.  *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).  The Court of Appeal's conclusion was also a "reasonable" application of this standard under 28 U.S.C. § 2254(d)(1).  When the instruction is read in its entirety, it correctly and clearly states that the defendant is presumed innocent, that the prosecutor must prove every element of the offense beyond a reasonable doubt, and that if such proof is lacking that the jury must acquit.  None of this language leaves any reasonable impression that the defense must present evidence or that the prosecution need only present more evidence than the jury.  The instruction that the prosecution must prove every element beyond a reasonable doubt was only reinforced by the other instructions given, as described by the California Court of Appeal.

The state court's finding that CALCRIM 220 did not violate Petitioner's right to due process was neither contrary to nor an unreasonable application of federal law, nor did it not involve an unreasonable determination of the facts.[9]  Petitioner is not entitled to

_____

[9]The instruction numbered 3502 did not, as Petitioner asserts, "require" the jury "to presume" that she engaged in the unlicensed practice of medicine, but rather

1    habeas relief.

2        4.    Vagueness

3        Petitioner claims that Cal. Bus. & Prof. Code § 2052 is unconstitutionally vague

4    because it does not give "fair warning" or adequately "define" an offense under that

5    section.  To avoid unconstitutional vagueness, a statute or ordinance must (1) define the

6    offense with sufficient definiteness that ordinary people can understand what conduct is

7    prohibited; and (2) establish standards to permit police to enforce the law in a non-

8    arbitrary, non-discriminatory manner.  *Vlasak v. Superior Court of California*, 329 F.3d

9    683, 688-90 (9th Cir. 2003).

10        Section 2052 provides in relevant part:

11        [A]ny person who practices or attempts to practice, or who advertises or
          holds himself or herself out as practicing, any system or mode of treating
12        the sick or afflicted in this state, or who diagnoses, treats, operates for, or
          prescribes for any ailment, blemish, deformity, disease, disfigurement,
13        disorder, injury, or other physical or mental condition of any person,
          without having at the time of so doing a valid, unrevoked, or unsuspended
14        certificate as provided in this chapter or without being authorized to
          perform the act pursuant to a certificate obtained in accordance with some
15        other provision of law is guilty of a public offense . . .

16        The language of this statute is sufficiently specific.  A statute will meet the

17    certainty required by the Constitution if its language conveys sufficiently definite

18    warning as to the proscribed conduct when measured by common understanding and

19    practices.  *Panther*, 991 F.2d at 578.  Where, as here, First Amendment freedoms of

20    speech and religion are not implicated, a vagueness challenge may not rest on

21    arguments that the law is vague in its hypothetical applications but must show that the

22    law is vague as applied to the facts of the case at hand.  *See United States v. Johnson*,

23    130 F.3d 1352, 1354 (9th Cir. 1997).  Section 2052 is sufficiently clear and definite for

24    _____

25    instructed the jury that it could not find her guilty "unless" it found that she engaged in

26    such a practice.  In addition, Petitioner's bare and conclusory assertion that the

27    instruction on consciousness of guilt is unconstitutional lacks any explanation.  Neither

      of these arguments warrants federal habeas relief.

28                                              19

an ordinary person to understand that a crime was committed when, as the evidence showed in this case, Petitioner represented herself to a patient that she was a licensed medical practitioner, examined the patient for medical problems, and then diagnosed her as healthy, all without a license from the State of California to practice medicine. The statute also sets forth sufficient criteria to permit enforcement that is neither arbitrary nor discriminatory.

Petitioner argues that the statute conflicts with Cal. Bus. & Prof. Code § 2053.5. Sections 2053.5 and 2053.6 carves out a limited exception to Section 2052 for alternative health care providers. Section 2053.5 lists specific actions that an alternative health care provider without a medical license may not undertake, including surgery, x-rays, prescribing "legend drugs" or controlled substances, or representing herself to be a licensed medical doctor. Section 2053.6 sets forth in great detail the disclosures an alternative health care provider must make, including that she is not a licensed physician, prior to providing health care services not listed in Section 2053.5. Sections 2053.5 and 2053.6 are not in conflict with Section 2052, but rather carve out an exception allowing alternative health care providers to engage in health care that is subject to specific limitations and clearly defined disclosure requirements. For purposes of Petitioner's claim, this statutory scheme made it amply clear that because she did not have a medical license, she could not represent herself as a licensed doctor, examine Patel and pronounce her healthy, and accept payment for that service, as the evidence in this case showed. Consequently, the statute is not unconstitutionally vague.

Petitioner also asserts that the statute is overbroad and violates her equal protection rights. She does not explain the statute's overbreadth at all, and she has not shown how the statute treated her differently than any other similarly situated person for purposes of establishing an equal protection violation.

Accordingly, Petitioner has not shown that Section 2052 is unconstitutional, or

that the state court's rejection of this claim was contrary to or an unreasonable application of federal law or that it involved an unreasonable determination of the facts. Petitioner is not entitled to habeas relief on this claim.

5.      Prosecutorial Misconduct

Petitioner claims that the prosecutor committed various forms of misconduct. First, she claims that the prosecutor engaged in invidious discrimination in selecting her for prosecution.[10]  Although the decision whether to prosecute and what charges to bring generally rests entirely in the prosecutor's discretion, this discretion is subject to constitutional constraints.  *United States v. Armstrong*, 517 U.S. 456, 464 (1996).  One of these constraints is that the prosecutorial decision may not violate equal protection by resting on "'an unjustifiable standard such as race, religion, or other arbitrary classification.'"  *Id.* (citation omitted).  Courts presume that prosecutors have properly discharged their official duties.  *Id.*  In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present "'clear evidence to the contrary.'"  *Id.* (citation omitted).  A prosecutor's charging decision cannot be judicially reviewed absent a prima facie showing that it rested on an impermissible basis, such as gender, race or denial of a constitutional right.  *United States v. Diaz*, 961 F.2d 1417, 1420 (9th Cir. 1992); *United States v. Redondo-Lemos*, 955 F.2d 1296, 1302 (9th Cir. 1992).

To establish a prima facie case of selective prosecution, the claimant must show that the prosecutorial policy (1) had a discriminatory effect and (2) was motivated by a discriminatory purpose.  *Armstrong*, 517 U.S. at 465.  In order to establish a discriminatory effect, the claimant must show that similarly situated individuals of a different race were not prosecuted.  *See id.*  Petitioner has not identified or shown that

---

[10]Petitioner does not allege on what basis the prosecution discriminated against her, but for purposes of this analysis the Court assumes that she means that she was prosecuted based upon her ethnicity or gender.

any similarly situated individuals of a different rase were not prosecuted.  Her

unsupported allegations of selective prosecution are not enough.  *United States v. Davis*,

36 F.3d 1424, 1433 (9th Cir. 1994).  The fact that she is part of a protected class does

not alone provide a colorable basis for believing that a selection has taken place; nor

would evidence that other members of the protected class were prosecuted, even if she

had any such evidence.  *See United States v. Aguilar*, 883 F.2d 662, 705-08 (1989).

Accordingly, she has not made out a prima facie case of unconstitutional selective

prosecution.

Petitioner also claims that the prosecutor failed to turn over exculpatory

evidence, including her disagreements with the Fremont Chamber of Commerce, the

Better Business Bureau documents, and INS pamphlets and instructions.  This claim

fails because she does not demonstrate that this evidence was favorable, that the

prosecution willfully or inadvertently suppressed it, and that she was prejudiced by the

prosecutor's failure to turn it over.  *See Banks v. Dretke*, 540 U.S. 668, 691 (2004)

(citing *Brady v. Maryland*, 373 U.S. 83 (1963)).

Petitioner also claims that the prosecutor presented false evidence and perjured

testimony.  A due process violation may occur when a prosecutor obtains a conviction

by the use of evidence that he knows or should knows is false or testimony that he know

or should know is perjured, provided that there a reasonable likelihood that the evidence

testimony could have affected the judgment of the jury.  *United States v. Agurs*, 427

U.S. 97, 103-07 (1976).  Petitioner's assertions that the evidence and testimony was

false is based entirely on her disagreement with it.  This does not, without more,

establish that it was in fact false or perjured, much less that the prosecutor knew or

should have known that to be the case.

Petitioner makes additional allegations about the prosecutor – that the prosecutor

made misrepresentations before trial to generate prejudicial pretrial publicity, made

22

1  further misrepresentations during trial about the evidence, and destroyed exhibits.  She

2  does not identify any specific misrepresentations or exhibits or otherwise support these

3  allegations with any specific facts.  As such, these allegations are conclusory and do not

4  set forth any viable basis for habeas relief.

5       The state court's rejection of the claim of prosecutorial misconduct was neither

6  contrary to nor an unreasonable application of federal law, nor did it involve an

7  unreasonable determination of the facts.  Petitioner is not entitled to habeas relief on this

8  claim.

9  6.   Judicial Misconduct

10      Petitioner claims that the trial judge was biased against her, in violation of her

11  right to due process.  The bulk of her claim is based on rulings by the judge with which

12  she disagrees, which is not a valid basis for a bias or partiality motion.  *See Liteky v.

13  United States*, 510 U.S. 540, 555 (1994).  Petitioner also alleges that the trial judge

14  made disparaging remarks and coerced the jury, but she does not identify any such

15  remarks that rise to the level of judicial misconduct.  She also complains that by the

16  time of sentencing the trial judge had formed an opinion that Petitioner was dishonest.

17  "[O]pinions formed by the judge on the basis of facts introduced or events occurring in

18  the course of the current proceedings . . . do not constitute a basis for a bias or partiality

19  motion unless they display a deep-seated favoritism or antagonism that would make fair

20  judgment impossible." *Id.*  No such "deep-seated favoritism or antagonism" is

21  apparent from the record.  As a result, Petitioner has not established a due process

22  violation on the basis of judicial misconduct.

23

24  7.   Admission of Evidence

25      Petitioner claims that the trial court should not have admitted testimony of David

26  Lowman, Richard Oriakhi and others that Petitioner identified herself to them as a

27

28                                    23

medical doctor.  She claims this was improper "hearsay", that it was prejudicial, and had no relevance to her interactions with Balakrishnan.  The California Court of Appeal found the evidence admissible under California Evidence Code § 1101(a) to prove a common scheme or intent, and to negate mistake, because it was sufficiently similar to the misrepresentations alleged against Petitioner in the charged offenses to be probative of the critical issue of whether she made those misrepresentations.  *People v. Chopra*, 2007 WL 4426652 at **8-9.  The state court went on to find the probative value of the evidence substantial because Petitioner's repeatedly misidentifying herself as a medical doctor made it even less likely that she did so mistakenly in the charged offenses.  *Id.* at *11.  Lastly, the state court found the probative value of the evidence was not outweighed by its prejudicial effect because, while damaging to Petitioner, the evidence was not prejudicial in the sense of being unrelated to the charged offenses, remote in time, or more inflammatory than the charged offenses.  *Id.*

Petitioner cannot obtain habeas relief based on this claim.  While circuit law has found that the admission of evidence can violate the due process guarantee to a fundamentally fair trial, the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ."  *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009).  Consequently, the admission of such evidence cannot be "contrary to, or an unreasonable application of, clearly established Federal law" within the meaning of 28 U.S.C. § 2254(d).  *Id.*  In any event, only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process.  *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).  As explained by the California Court of Appeal, Petitioner's misrepresenting herself as a medical doctor on repeated occasions in the past is strong evidence that she did not do so inadvertently or mistakenly in the charged offenses.  There was also no risk of improper prejudice

insofar as the uncharged misrepresentations were not remote in time or more inflammatory than the charged offenses.  Under these circumstances, there were permissible inferences the jury could draw from the evidence, and there was virtually no likelihood that it rendered the trial fundamentally unfair so as to violate due process.

8.   Pretrial Publicity

Petitioner claims that "an avalanche" of negative pretrial publicity prejudiced the jury in violation of her right to due process.  She has cited to no adverse pretrial publicity, however.  Rather, she cites to a pretrial hearing about a defense motion to exclude Petitioner's newspaper advertisements seen by the victims in which she represented herself as a doctor.  This constitutes evidence of Petitioner's falsely holding herself out as a medical doctor, not prejudicial publicity about the trial.  In the absence of any evidence of negative pretrial publicity about the trial, let alone enough to infringe on her constitutional right to a fair trial, federal habeas relief is not warranted on this claim.

9.   Sufficiency of Evidence

Finally, Petitioner claims that there was insufficient evidence to support her conviction.  Petitioner cannot demonstrate that the state court's denial of this claim was contrary to, or an unreasonable application of, clearly established state law, or that it was based on an unreasonable determination of the facts.

Demonstrating entitlement to habeas relief based on a claim of insufficient evidence requires a substantial showing.  Because the Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged",  *In re Winship*, 397 U.S. 358, 364 (1970), a state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt states a constitutional claim.  *See Jackson v.*

*Virginia*, 443 U.S. 307, 321-324 (1979).

The Supreme Court has emphasized, however, that "*Jackson* claims face a high bar in federal habeas proceedings . . ." *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam).  A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt.  *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992);  *see also Coleman*, 132 S. Ct. at 2065.  Rather, the federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Payne,* 982 F.2d at 338 (quoting *Jackson*, 443 U.S. at 319).  A due process violation may be found only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt.  *Jackson*, 443 U.S. at 324.   Furthermore, a federal habeas court "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any [] conflicts in favor of the prosecution, and must defer to that resolution." *Id*. at 326.  The court may not substitute its judgment for that of the jury, *see Coleman*, 132 S. Ct. at 2065, and under *Jackson*'s standard of review, a jury's credibility determinations are entitled to "near-total deference," *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

Petitioner's argument simply recounts her version of the events.  Specifically, she denies representing herself as a medical doctor to Balakrishnan and Patel, filling out the medical portion of INS form, signing the form, or writing the false medical license number.   Her protestations that she did not commit the charged crime does not establish that there was insufficient evidence for a reasonable juror to find otherwise based upon the testimony of Balakrishnan, the findings of the handwriting expert, the INS forms, Petitioner's newspaper advertisements, and the testimony of a number of other witnesses to whom she had misrepresented herself as a medical doctor.  The jury's finding the testimony of Balakrishnan and the other prosecution witnesses is, as the authority above

provides, entitled to "near-total deference," and Petitioner does not show why the jury could not reasonably believe it.  Petitioner's additional arguments about evidence that was not introduced at trial does not undermine the rationality of the jury's decision based upon the evidence before it.  In any event, for the reasons described above, this evidence (documents from the Better Business Bureau and the Fremont Chamber of Commerce) did not undermine the strength of the case against Petitioner.  Accordingly, Petitioner is not entitled to relief on this claim.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. Petitioner has failed to make a substantial showing that her claims amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would find this Court's denial of her claim debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Consequently, no certificate of appealability is warranted in this case.

The clerk shall enter judgment and close the file.

IT IS SO ORDERED.

DATED:  <u>March 28, 2013</u>

_____
JEFFREY S. WHITE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

REENA CHOPRA,

              Plaintiff,

  v.

CALIFORNIA et al,

              Defendant.

_____/

Case Number: CV09-00841 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 28, 2013, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Reena Chopra
33825 Depot Road
Union City, CA 94538

Dated: March 28, 2013

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk